IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 05-231 T
(Chief Judge Damich)

---

JZ Buckingham Investments LLC as Tax Matters Partner of JBJZ Partners, a South Carolina general partnership,

Plaintiff,

v.

United States of America,

Defendant.

---

# RCFC 40.2(b) NOTICE OF INDIRECTLY-RELATED CASES AND MOTION FOR CONSOLIDATION OF NEWLY FILED CASES AND THEIR TRANSFER TO CHIEF JUDGE DAMICH

**PLEASE TAKE NOTICE THAT** on March 28, 2006, counsel for Plaintiff in the above captioned matter filed three new FPAA actions dealing with the same COBRA tax shelter product which is the subject of the above-captioned matter. Like the *JZ Buckingham* case, these three new cases also involve the design, marketing and implementation of the COBRA tax shelter product. Like the *JZ Buckingham* case, these three new cases also involve the purchase and contribution of off-setting European-style digital options to a partnership for the purpose of generating desired tax losses. In all four cases, these purchases and contributions were orchestrated through essentially the same set of promoters. The only apparent difference between the COBRA transactions in 1999 at issue in *JZ Buckingham* and the COBRA

transactions in 2000 at issue in the three new cases is that a different law firm was enlisted to issue a legal opinion. The United States is the defendant in all four cases and the same defense counsel represents the opposing parties in all four cases. The three new COBRA matters are:

1. *MURFAM Farms, LLC, by and through Wendell H. Murphy, Jr. v. United States*, Fed. Cl. No. 06-245T-MBH;
2. *PSM Farms, LLC, by and through Stratton K. Murphy v. United States*, Fed. Cl. No. 06-246T-MBH; and
3. *Murphy Pork Partners, LLC, by and through Wendell H. Murphy, Jr. v. United States*, Fed. Cl. No. 06-247T-EGB.

Because all four cases "present common issues of fact and . . . transfer . . . would significantly promote the efficient administration of justice," RCFC 40.2(b)(1), the United States respectfully requests that these three newly filed matters (the "*Murphy* cases") be transferred to Chief Judge Damich and also that the three *Murphy* cases be consolidated for all purposes, including discovery and trial. Counsel for plaintiffs in *JZ Buckingham* and the *Murphy* cases has no objection to the transfer of the *Murphy* cases and also has no objection to the consolidation of the *Murphy* cases for purposes of discovery and trial.

## I

## ARGUMENT

### TRANSFER OF THE *MURPHY* CASES WOULD PROMOTE JUDICIAL EFFICIENCY

The three Murphy cases, like the pending *JZ Buckingham* case before this Court, all involve the COBRA tax shelter product and present issues of fact and law that are common to the case of JZ Buckingham pending before this Court.

For purposes of coordinating discovery and promoting judicial efficiency, three other COBRA tax shelter cases in District Court have already been consolidated in *In re COBRA Tax Shelter Litigation*, No. 1:05-ml-9727(S.D. Ind.)(JDT)(WTL). Just as the Judicial Panel on Multi-District Litigation (the "MDL Panel") has already determined, the consolidation of COBRA tax shelter matters before a single judge promotes judicial economy. On December 6, 2005, the MDL Panel transferred COBRA matters from the Western District of Texas[1] to the Southern District of Indiana for consolidation of pre-trial proceedings with *Carmel Partners, et al. v. United States*, No. 1:04-1661 (S.D. Ind.). Taxpayers in the District Court actions opposed transfer, but the MDL Panel granted the transfer motion of the United States, stating:

> [T]he Panel finds that these three actions involve common questions of fact, and that centralization under Section 1407 in the Southern District of Indiana will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation. These actions share allegations concerning the propriety of a generic tax product known as "Currency Options Bring Reward Alternatives" (COBRA), which the Internal Revenue Service has identified as an abusive tax shelter. Centralization . . . is necessary to eliminate duplicative discovery, prevent inconsistent pre-trial rulings, and conserve the resources of the parties, their counsel and the judiciary.

[1] *Gary Woods, etc. v. United States*, No. 5:05-216 (W.D. Tex.) and *Gary Woods, etc. v. United States*, No. 5:05-217 (W.D. Tex.).

*In re COBRA Tax Shelters Litigation*, MDL. No. 1727 (Dec. 6, 2005).

Abusive tax shelters can be custom-designed for a single user or prepared as a generic tax product sold to multiple clients.[2] The COBRA product common to all of these actions, appears to have been developed by the Chicago law firm of Jenkens & Gilchrist, a Professional Corporation ("J&G"). Deutsche Bank A.G. ("DB") appears to have also been a co-developer and served as the financial counter party to these private wagering contracts. During 1999, J&G recruited various professional firms to assist them in the further design, development, marketing and implementation of the product. Independently, the accounting firm of Ernst & Young, LLP ("E&Y") also began to develop an offsetting option product. E&Y recruited the Texas law firm of Scheef & Stone, LLP ("S&S") to assist it in developing the product. In exchange for a fee, S&S introduced E&Y to J&G. In turn, J&G agreed to assist in the design and implementation of E&Y's offsetting option product and prepare a legal opinion endorsing the product. E&Y also recruited the law firm of Brown & Wood to prepare a legal opinion blessing the product for tax purposes. In the fall of 1999, E&Y, J&G, and DB began marketing the product under the name of COBRA, an acronym for "Currency Options Bring Reward Alternatives." The transactions in issue here all relate to the same generic COBRA tax shelter product.

The strategy was essentially based on the purchase by wealthy taxpayers of what were characterized as option contracts, but which in reality were nothing more than private wagering arrangements. As designed, COBRA involved a highly complex pre-arranged multi-step transaction requiring the formation of a number of differing entities, including LLCs, for the

[2] *See*, *The Role of Professional Firms in the U.S. Tax Shelter Industry, U.S. Senate Permanent Subcommittee on Investigations*, S. Rep. No. 109-54, at 1 (2005) (hereinafter "*Senate Report*").

individual taxpayers seeking a tax loss, a partnership, and also a Subchapter “S” corporation. The LLCs were formed to engage in what were characterized as offsetting European-style digital option transactions, arranged through DB. Within a few days, these so-called “option contracts” were then transferred to a partnership. Shortly thereafter, the partners transferred their partnership interests to a Subchapter “S” corporation.

The purpose of these multiple transfers was to artificially inflate the basis of the purported option contracts and, correspondingly, the partners’ basis in their partnerships, thereby allowing them to report a significant purported tax (but not economic) loss. *See*, I.R.S. Notices 99-59, 1999-52, I.R.B. 761 and 2000-44, 2000-36 I.R.B. 255. The partners the *JZ Buckingham* and *Murphy* cases engaged in the same multi-step cookie-cutter COBRA tax transaction. Numerous other taxpayers also purchased this generic tax product. In all, these COBRA taxpayers sought to avoid nearly $1 billion dollars in tax and interest.

In 2003-2004, the Senate Permanent Subcommittee on Investigations (“SPSI”) conducted an extensive investigation and held hearings on the role of professional firms in the sale of abusive tax shelters. Based on a massive amount of subpoenaed documentary and electronic evidence, interviews, depositions and hearing testimony, the SPSI prepared a 132-page report, which details, in part, the roles of E&Y and DB in the development, marketing, sale and implementation of generic abusive tax shelters, including the COBRA transaction. *See*, *Senate Report*, pp. 77-85, 96-100, and 104-109.[3]

[3] In 2003, the Senate Finance Committee conducted its own separate investigation of the tax shelter industry during which Henry Camferdam testified on October 21, 2003. *See*, "Tax Shelters: Who's Buying, Who's Selling, and What's the Government Doing About it? S.Hrg. 108-371 (October 21, 2003).

Given the massive amount of discovery that the Government is planning to undertake in the COBRA litigation, it would promote judicial efficacy to have all discovery coordinated in the Court of Federal Claims COBRA cases, as it is with the District Court MDL COBRA litigation, before one judge. This is particularly true in this highly-contentious litigation because there may be numerous discovery disputes, not only initiated by the taxpayers' counsel in this litigation, but also by counsel representing the professional firms promoting the COBRA tax shelter. Failure to transfer the *Murphy* cases to Chief Judge Damich could thus result in a plethora of redundant pre-trial judicial rulings, with the possibility of inconsistent or conflicting decisions, not to mention the obvious waste of judicial resources.

Transfer is appropriate for indirectly related cases if it will promote judicial economy. *See Banks v. United States*, 68 Fed.Cl. 526 (2005) (indirectly related cases consolidated for purposes of trying liability issue). Because all four cases "present common issues of fact and . . . transfer . . . would significantly promote the efficient administration of justice," RCFC 40.2(b)(1), the United States respectfully requests that the three newly filed matters (the "*Murphy* cases") be transferred to Chief Judge Damich.

**II.**

**CONSOLIDATION OF THE *MURPHY* CASES WOULD PROMOTE JUDICIAL EFFICIENCY**

The parties to the *Murphy* cases agree that consolidation of these three matters would promote judicial efficiency. It is the understanding of the United States that the individual COBRA participants in the *Murphy* cases are all members of the same family, and that the three separate Murphy family partnerships in these three cases all engaged in a similar COBRA-type transaction. Moreover, it is the understanding of the United States that the facts underlying the

three cases are essentially identical and that the same witnesses would testify in all three cases. Indeed, the *Murphy* cases are, for all practical purposes, directly related. The relation is only indirect because the partners in the three cases are different members of the Murphy family.

It is well settled that "[t]wo inquiries are required to determine whether consolidation should be granted. First, whether a common question of law or fact exists in [the] cases. Second, whether considerations regarding the interest of judicial economy outweigh the potential for delay, confusion and prejudice that may result from consolidation." *AT & T Corp. v. United States*, 69 Fed.Cl. 675, 676 (2006) (citation and internal quotation marks omitted). Moreover the:

> court must consider whether specific risks of prejudice and possible confusion are "overborne by the risk of inconsistent adjudication of common factual and legal issues, the burden on parties, witnesses, and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives."

*Energy Nuclear Indian Point 2, LLC v. United States*, 62 Fed.Cl. 798, 802 (2004)(quoting *Cinega Gardens v. United States*, 62 Fed.Cl 28, 31 (2004) (quoting *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1285 (2d Cir. 1990))).

Here, there is no risk of prejudice or delay because the three *Murphy* cases are in the same procedural posture, i.e., they have just been filed, and all by the same counsel, who is also the counsel for *JZ Buckingham*. Moreover, the *Murphy* cases involve the same law and facts and essentially the same parties.

## CONCLUSION

For the reasons stated herein, the United States respectfully requests that the *Murphy* cases be consolidated and transferred to Chief Judge Damich. Plaintiffs in *JZ Buckingham* and the *Murphy* cases have no objection to consolidation of the *Murphy* cases and transfer to Chief Judge Damich.

Respectfully submitted,

s/ Dennis M. Donohue
DENNIS M. DONOHUE
Attorney of Record

Senior Litigation Counsel
U.S. Department of Justice - Tax Division
Post Office Box 403
Ben Franklin Station
Washington, D.C. 20044
(202) 307-6492

EILEEN J. O'CONNOR
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section

**CERTIFICATE OF SERVICE**

I hereby certify that on May 5, 2006, I electronically filed the foregoing Notice with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

Joel N. Crouch
Texas State Bar No. 05144220
Meadows, Owens, Collier, Reed
Cousins & Blau, L.L.P.
901 Main Street, Suite 3700
Dallas, Texas 75202

s/ David M. Steiner

David M. Steiner
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 55
Ben Franklin Station
Washington, D.C. 20044
(202) 307-5892